**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 11 2013, 5:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANK D. DINIUS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1301-CR-29 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Samuel R. Keirns, Judge
Cause No. 02D06-1207-FD-1035

October 11, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

A defendant's chance of prevailing when invoking the "incredible dubiosity" rule is rare. In this case, the victim's testimony about the injuries that appellant-defendant Frank D. Dinius inflicted upon her was supported by other evidence presented to the jury, including the testimony of several witnesses and photographs of her injuries. Thus, the incredible dubiosity rule does not apply in this instance and we find that the evidence was sufficient to prove Dinius's convictions for Confinement[1] and Domestic Battery,[2] both class D felonies, and for Interference with the Reporting of a Crime,[3] a class A misdemeanor.

In addition, we conclude that the trial court did not abuse its discretion in not finding certain mitigating circumstances that Dinius proposed or in weighing the aggravating and mitigating factors. Finally, we find that Dinius's sentence was appropriate when considering the nature of the offenses and his character. Thus, we affirm the trial court's judgment.

## FACTS

Sometime during the late evening of April 10, 2012, Dinius picked up his girlfriend, Audrey Barnett, and their son from a Fort Wayne hospital. Barnett and some of her relatives had been visiting her sister at the hospital.

---

[1] Ind. Code § 35-42-3-3.

[2] I.C. § 35-42-2-1.3.

[3] Ind. Code § 35-45-2-5.

2

At some point, Barnett made Dinius stop his vehicle because she believed that he was intoxicated. Barnett drove the rest of the way to Dinius's apartment at the motel where they had originally planned to stay. However, Barnett changed her mind about staying there because Dinius was drunk. Dinius became angry and tried to remove their son from the back seat. However, Dinius grabbed Barnett's arm, whereupon she heard a "pop" and felt a sharp pain in her shoulder. Tr. p. 30. Barnett exited the vehicle and was able to remove the child. When Barnett started walking toward the motel to call the police, Dinius grabbed Barnett and started choking her. Dinius subsequently released Barnett and they proceeded to his apartment.

As Barnett was removing her belongings from the apartment, Dinius grabbed her, slammed her onto the bed, and caused her to hit her leg on a board resulting in severe pain. Dinius then grabbed Barnett and shoved her into a bathroom wall.

Dinius forced their son to lie on the bed and then smacked him. Dinius then told Barnett to stay in the bed. He placed his arm around her so that she could not leave. However, once Dinius fell asleep, Barnett grabbed her belongings, took Dinius's car keys from his pocket, and left with their son.

Barnett called the police, reported the incident, and asked an officer to meet her at the hospital. When Barnett was examined, it was determined that the muscles on her arm were severely bruised. Barnett also suffered severe pain in her shoulder. Medical personnel placed Barnett's arm in a sling that she wore for nearly three weeks. Barnett also had a large bruise on her right leg and a pink mark on her neck where Dinius had

3

choked her. A police officer who was at the hospital obtained Barnett's statement, observed her injuries, and took photographs. A physician's assistant at the hospital noticed that Barnett's injuries were consistent with what had been reported.

Sometime in September 2012, Dinius sent Barnett a text message, apologizing for his actions. Following a jury trial, Dinius was convicted of criminal confinement, a class D felony, interfering with reporting a crime, a class A misdemeanor, and class D felony battery.

At the sentencing hearing, Dinius argued several mitigating factors, including the undue hardship on his two children if he was incarcerated, that alcohol was a factor in the crimes, and that he was steadily employed. The trial court identified Dinius's prior criminal history including two juvenile adjudications, six misdemeanor convictions, and one felony conviction as a significant aggravating factor.

The trial court further found that prior attempts at rehabilitation and community service had failed, that Dinius's probation had been revoked, and that his commission of a prior domestic battery was significant. The trial court commented that it would not identify Dinius's purported obligation toward his children as a mitigating factor because Dinius was not paying any court-ordered child support, and he committed the crimes in the presence of one of his children.

Thereafter, the trial court sentenced Dinius to two years of incarceration for class D felony confinement, one year on the interference count, and two years on the class D battery charge. Dinius now appeals.

4

DISCUSSION AND DECISION

I.  Sufficiency of the Evidence

Dinius does not allege that the State failed to prove the necessary elements of the crimes for which he was charged and convicted.  Rather, Dinius maintains that his convictions must be set aside because Barnett's testimony was inherently improbable and incredibly dubious.

The rule of incredible dubiosity applies if a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence.  Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007).  Also, the standard for "dubious testimony" is inherent contradiction.  Morell v. State, 933 N.E.2d 484, 492-93.

Contrary to Dinius's assertions, Barnett's testimony was clear and unequivocal about the confinement, Dinius's preventing her from calling the police, and battering her in front of their three-year-old child.  Additionally, the physician's assistant at the hospital testified that Barnett's injuries were consistent with what she had reported.  A police officer who was at the hospital obtained Barnett's statement, observed her injuries, and photographed them.  Finally, as noted above, Dinius texted Barnett apologizing for what he had done.

In light of the evidence that corroborated Barnett's testimony, the incredible dubiosity rule does not apply in this instance.  Fajardo, 859 N.E.2d at 1208.  Moreover, it is apparent that the jury judged the credibility of the witnesses, weighed the evidence, and

5

determined that Dinius was guilty of the crimes charged. We conclude that the evidence was sufficient to support Dinius's convictions.

## II. Sentencing

Dinius contends that his sentence must be set aside because the trial court ignored certain mitigating circumstances and improperly weighed the aggravating and mitigating circumstances. Dinius also challenges the appropriateness of his sentence in accordance with Indiana Appellate Rule 7(B).

If the trial court does not find that a mitigating factor exists after counsel has argued it, the trial court is not required to announce why it has found that the factor does not exist. Anglemyer v. State, 868 N.E.2d 482, 493 (Ind. 2007). The trial court also does not have to explain why it has rejected a mitigating factor that the defendant believes was significant. Widener v. State, 659 N.E.2d 529, 533 (Ind. 1995).

In this case, the alleged mitigating circumstances that Dinius claims were ignored were, in fact, argued at the sentencing hearing. Tr. p. 4, 6-8. The trial court considered these factors and rejected them as mitigating circumstances. Id. at 8-11. Finally, while Dinius claims that the trial court improperly weighed the aggravating and mitigating circumstances, we no longer review these factors for an abuse of discretion. Anglemyer, 868 N.E.2d at 491. For all of these reasons, Dinius's arguments that the trial court abused its discretion in sentencing him fails.

As for Dinius's claim that his sentence was inappropriate under Indiana Appellate Rule 7(B), we give due consideration to the trial court's sentencing decision, and the

defendant must persuade us that his sentence is inappropriate in light of both the nature of the offenses and his character. Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

Dinius contends that the two-year aggravated sentences on both the class D felony[4] confinement and battery counts were inappropriate. The evidence regarding the nature of the offenses established that Dinius forcibly confined Barnett when she told him that she was going to call the police. Dinius refused to allow Barnett to leave his apartment and forced her to move from room to room. Dinius also pulled Barnett's arm while they were in the vehicle, which caused her severe pain, and her arm had to remain in a sling for almost three weeks. Dinius pushed Barnett onto the bed and hit her in front of their young child. In short, Dinius's nature of the offense argument avails him of nothing.

Dinius's criminal history displays his character. As noted above, Dinius has accumulated two juvenile adjudications, six misdemeanor convictions, and a felony conviction. Two of those crimes, which were committed around the time of the instant offenses, were battery and domestic battery.

Dinius has violated his probation, has had several opportunities for rehabilitation, yet he has not taken the opportunity to conform his behavior to society's rules. Also, the fact that Dinius committed these offenses in front of his three-year-old child established little regard for the child or the psychological damage that might result. Dinius has failed to show that his sentence was inappropriate.

---

[4] The sentencing range for a class D felony is from one-and-one-half years to three years, with one-and-one-half years being the advisory term.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.